**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Carol A. Saville, | : | Case No. 3:06CV3015 |
| Plaintiff, | : | |
| vs. | : | |
| Commissioner of Social Security, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (I) and 423. Pending are the parties' briefs (Docket Nos. 18 and 19). For the reasons set forth below, the Commissioner's decision is affirmed.

**PROCEDURAL BACKGROUND**

Plaintiff initially applied for DIB on July 17, 2001. On January 7, 2004, her application was denied by Administrative Law Judge (ALJ) M. Michael Foley. She did not appeal his decision. She filed a second DIB application on March 11, 2004 and alleged disability since August 13, 2000, due to pain, fatigue, weakness in her right foot, left ankle, back and hip (Tr. 49-51). The second application was denied initially and on reconsideration (Tr. 39-40), and a hearing was conducted on August 26, 2005, before ALJ Dale A. Garwal. Plaintiff, represented by counsel, Marcia Margolius, and Vocational

Expert (VE) Thomas Nimberger appeared and testified (Tr. 270).  On January 23, 2006, the ALJ filed a decision denying Plaintiff's claim (Tr. 15-20).  The ALJ's decision became the final decision of the agency when the Appeals Council denied review (Tr. 4-6).  Plaintiff then filed a timely action in this Court seeking judicial review of the Commissioner's decision denying benefits.

## JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## FACTUAL BACKGROUND

At the time of the hearing, Plaintiff was 47 years of age and lived in Norwalk, Ohio.  She was 5'7" tall and weighed 270 pounds.  She drove a car and had completed the eleventh grade in high school. .From 1994 to 2000, Plaintiff worked as head housekeeper at a motel on a seasonal basis from May to October.  As a supervisor,  she hired and fired personnel and was required to do only limited lifting, a maximum of fifteen to twenty pounds.  From October, 1999 to April, 2000,  Plaintiff was employed as a kitchen manager and cook at an Eagles' Club.  In that position, she  lifted a maximum of twenty pounds.  In 2000 she worked for one month as a bartender on a part-time basis (Tr. 273-279).

Plaintiff suffered from foot problems, hip problems, scoliosis, bone spurs, arthritis in her back and hip and chronic venostasis disease (Tr. 279-281, 285).  The hip problem was congenital and in 2000, Plaintiff underwent her first surgery to correct a congenital foot problem (Tr. 279, 281).  Plaintiff was instructed to wear support stockings; however, she disregarded these instructions.  During a typical eight-hour day she elevated her legs "a couple of hours" to reduce leg pain and swelling.  For pain she was taking Vicodin ES and Celebrex.  No injections for pain had been administered in approximately

one year (Tr. 286-287). Plaintiff was trying several therapy forms to relieve pain but without success.

Although she sometimes used a cane or wheelchair, Plaintiff estimated that she could walk a half of a block (Tr. 283).  She further claimed that she could stand for half an hour before sitting, sit up to twenty minutes before ambulating, stand three hours with intermittent sitting and standing and lift ten pounds (Tr. 282, 283, 284).  Plaintiff could not bend or stoop or climb stairs without difficulty.  Plaintiff was capable of showering, dressing herself, doing her laundry, reading and shopping for groceries (Tr. 284-85).

The VE classified Plaintiff's job as head housekeeper as light, highly skilled work, the lunch cook as a light, semiskilled position and the cook helper position as medium, unskilled work (Tr. 288). Assuming a person of 47 years of age, an educational level of 11 grades and work experience as a head housekeeper, lunch cook and cook's helper, with the abilities to lift five pounds frequently, lift up to ten pounds occasionally, stand up to two hours in an eight-hour workday, sit with an option to stand, occasionally climb, bend and stoop, this person could perform work as an order clerk, addresser, and information clerk (Tr. 289, 290).

Based on the DICTIONARY OF OCCUPATIONAL TITLES and Ohio employment statistics, the VE concluded that the order clerk position is sedentary work that accommodates a sit/stand option. Nationally, there are 210,000 such positions (Tr. 289).  There were 300000 addresser positions nationally and 180,000 information clerk positions.  The information clerk provided a sit/stand option and it would take more than three months and up to six months to prepare for this vocation (Tr. 289-290, 292).  The VE opined that in an ergonomic environment, an individual could elevate his or her leg for no longer than one hour at a time.  However, elevating a leg longer than one hour would compromise the terms of employment and take the individual out of the workplace (Tr. 291).

## **MEDICAL EVIDENCE**

*2000*

On February 8th, Dr. N. M. Pachuda observed degenerative changes in Plaintiff's right foot, namely, a small erosion of the medial aspect of the distal shaft and head of the first long bone in the mid-foot (Tr. 148). He considered the results of the bone scan study conducted on February 8th abnormal; however, the blood pool study demonstrated no significant abnormalities (Tr. 149).

In March, Plaintiff was treated for left elbow sprain (Tr. 144). There was no fracture or dislocation (Tr. 147). On April 20, Plaintiff was "started on a steroid" to treat possible nerve entrapment syndrome (Tr. 142). Although Plaintiff complained that she had a bladder infection on May 31st, Dr. Vicki J. Brown suspected that Plaintiff had hemorrhagic cystitis (Tr. 139).

On September 29th, Dr. Pachuda removed a bunion, corrected a hammertoe using a joint release, shortened a bone and realigned Plaintiff's right fifth toe (Tr. 116, 117, 118).

*2001*

Plaintiff was treated for chronic bronchitis on January 29th (Tr. 134). Her chest X-ray study was normal (Tr. 146). On January 31st, Plaintiff was discharged from therapy because she was unable to tolerate progression to closed chain exercises of the right ankle (Tr. 133).

On March 6th, she underwent a contracted joint release of the right foot (Tr. 104, 106).

In June, Plaintiff underwent four physical therapy treatments including massages and stretching. She was discharged because there was no significant improvement in her condition resulting from the treatment (Tr. 129). Plaintiff was treated at the emergency room on June 20th for first and second degree burns on her right hand (Tr. 130).

On October 2nd, mild degenerative changes were noted in Plaintiff's right and left hip joints

consistent with mild degenerative osteoarthritis (Tr. 145). On December 22nd, Plaintiff was diagnosed with soft tissue swelling; however, there was no evidence of underlying acute bone or joint abnormality (Tr. 103). She was prescribed crutches to ambulate (Tr. 102).

*2002*

The magnetic resonance imaging(MRI) of Plaintiff's left ankle taken on July 17, 2002 showed, *inter alia*, ankle sprain, space edema extending along the lateral and dorsal mid-foot region early tendinosis (Tr. 124). Plaintiff's left foot showed prominent erosion of the dorsal and medial metaphyseal region of the first metatarsus, flexion contractures of the second through the fifth metatarsal phalangeal joints and atrophy of the interosseous muscles of the fourth intermetatarsal space (Tr. 125).

*2003*

Plaintiff underwent comprehensive pain management which was apparently ineffective (Tr. 246-260). After conducting a comprehensive initial evaluation on February 24th, Dr. Priti Nair diagnosed Plaintiff with fibromyalgia, scoliosis, congenital hip dysplasia, possible degenerative disc disease and tarsal tunnel syndrome (Tr. 188, 190-202).

Dr. Bharat C. Shah diagnosed Plaintiff with lumbar spondylosis/lumbar radiculopathy on June 16th (Tr. 178). On June 20th, Dr. Mark A. Bigler noted that Plaintiff's blood pressure was elevated every month during pain management sessions (Tr. 222). On July 10 th, Dr. Pachuda administered a cortisone injection and insinuated that Plaintiff's weight and failure to wear the prescribed orthotics and proper shoes complicated her recovery (Tr. 128).

In September, Dr. Shah diagnosed Plaintiff with lumbar spondylosis at L4-5 and L5-S1 (Tr. 173).

*2004*

In May, Dr. Marc D. Dolce made a provisional diagnosis of chronic venous status disease and deformity of a joint in the left big toe (Tr. 205). To decrease the swelling in the lower extremities, Dr. Dolce recommended the continued use of compression stockings and compression therapy (Tr. 206). Dr. Bigler prescribed and refilled a prescription for an analgesic to treat pain and swelling in Plaintiff's ankles on the following dates: May 7, May 17, May 26, June 24, June 25, July 15, August 16, September 17, September 24, and October 7, October 22, December 10 and December 12 (Tr. 216, 217, 237-240). In June, Dr. Bigler noted that Plaintiff's blood pressure was uncontrolled and her blood cholesterol level was elevated (Tr. 217).

Dr. Thomas T. Vogel opined that Plaintiff could occasionally stoop, kneel or crouch, occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about two hours in an eight-hour workday and sit about six hours in an eight-hour workday (Tr. 209, 210). Plaintiff had no manipulative, visual or communicative limitations (Tr. 211).

*2005*

Plaintiff presented to Dr. Bigler in January, 2005 for a refill on her narcotic pain reliever and Prevacid®. She called in requests for refills of the narcotic pain reliever on or about February 8 and March 10 (Tr. 235).

**STANDARD FOR DISABILITY**

To establish entitlement to disability benefits, a claimant must prove that he or she is incapable of doing substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to last for a period of twelve months or results in death. *Murphy v. Secretary of Health and Human Services*, 801 F. 2d 182, 185 (6th Cir. 1986) (*citing* 42 U. S. C. § 423(d)(1)(A) (1999)). The claimant must show that his or her impairment results from anatomical, physiological or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques derived from acceptable medical sources. 20 C.F.R. §§ 404.1513, 404.1528 (1999).

To determine disability, the ALJ uses a five-step sequential evaluation process. The ALJ considers:

(1) whether claimant is working;
(2) whether claimant has a severe impairment;
(3) whether claimant's impairment(s) meets or equals a listed impairment in Appendix1 of Subpart P of Part 404, Listing of Impairments;
(4) whether the impairment prevents the claimant form doing past relevant work; and
(5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 1520(a)-(f) (Thomson/West 2008).

If the claimant is working or has no impairment or combination of impairments which significantly limit physical or mental abilities, a finding that the claimant is not disabled will ensue despite medical condition, age, education, and work experience. However, when an impairment meets the durational requirement and meets or equals a listed impairment in Appendix 1, a determination of disabled will issue without consideration of age, education or work experience. If a decision cannot be made based on current work activity or on medical facts alone, and a severe impairment(s) exists, the ALJ must review the claimant's residual functional capacity (RFC) and the physical and mental demands of past relevant work. If the claimant can still do this kind of work, the ALJ will find the claimant not disabled. If the claimant cannot do any past relevant work because of the impairment, further consideration of the claimant's RFC, age, education and past work experience is explored to determine if the claimant can do other work. If the claimant cannot do other work, the ALJ must find the claimant disabled.

During the first four steps, the claimant has the burden of proof. *Walters v. Commissioner of*

*Social Security*, 127 F. 3d 525, 529 (6th Cir. 1997) (*citing Young v. Secretary of Health and Human Services*, 925 F.2d 146, 148 (6th Cir. 1990); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987)). This burden shifts to the Commissioner only at Step Five. *Id*.

## **ALJ DETERMINATIONS**

After consideration of the entire record, the ALJ made the following findings:

1. Plaintiff met the non-disability requirements for a period of disability and DIB set forth in Section 216(i) of the Act and was insured for benefits through the date of this decision.

2. Plaintiff had not engaged in substantial gainful activity since January 7, 2004. Plaintiff was unable to perform any of her past relevant work.

3. Plaintiff was obese and had chronic right foot pain and swelling, "severe" impairments, based upon the requirements in the regulations; however, Plaintiff's impairments did not meet or medically equal any of the listed impairments in Appendix 1, Subpart P., Regulation No. 4.

4. Plaintiff's allegation regarding the extent of her work limitations was not totally credible.

5. Plaintiff retained the residual functional capacity to lift and carry ten pounds occasionally and five pounds frequently and stand for a total of two hours per eight hour work day and sit for six hours per eight hour work day, with the option to sit or stand at will.

6. Plaintiff was 47 years old, a "younger individual," with an eleventh grade education, a skilled work background but no transferable skills.

7. Based on her residual functional capacity and vocational profile, she was able to make an adjustment to other jobs that exist in significant numbers in the national economy. Such jobs include order clerk, DOT job number 209.567-014, sedentary/unskilled work activity, 2,000 jobs existing in the local economy, and 210,000 jobs existing in the national economy; addresser, DOT job number 209-567-018, sedentary/unskilled work activity, 1,000 jobs existing in the local economy and 300,000 jobs existing in the national economy; and information clerk, DOT job number 237-367-018, sedentary/semi-skilled work activity that was often performed as unskilled work activity, 900 jobs existing in the local economy and 180,000 jobs existing in the national economy.

8. Plaintiff was not under a "disability," as defined in the Act, at any time through the date

of this decision. 20 C.F.R. § 404.1520(g).

(Tr. 19-20)

## **STANDARD OF REVIEW**

Pursuant to 42 U. S. C. § 405(g), this Court has jurisdiction to review the Commissioner's decisions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Id*. (*citing Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. (*citing Kirk v. Secretary of Health and Human Services*, 667 F. 2d 524, 535, (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2428 (1983)). The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id*. (*citing Brainard v. Secretary of Health and Human Services*, 889 F. 2d 679, 681 (6th Cir. 1989); *Garner v. Heckler,* 745 F. 2d 383, 387 (6th Cir. 1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Id*. (*citing Kirk, supra,* 667 F. 2d 536). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently. *See Kinsella v. Schweiker*, 708 F. 2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F. 2d 535, 545 (6th Cir. 1986) (en banc).

9

**DISCUSSION**

Initially, Plaintiff seeks reversal of the Commissioner's decision on the basis that the ALJ failed to find that substantial evidence proved her need to elevate her legs was a non-exertional limitation that precluded the performance of a range of sedentary work. Defendant contends that Plaintiff's claim is unsupported by the medical evidence as there is no evidence that any of her doctors instructed her to elevate her legs, that she asked any of her physicians for advice on elevating her legs or that she told any of her doctors that she elevated her legs to alleviate swelling (Docket No. 19, p. 10/14).

The issue is whether the ALJ failed to properly evaluate the medical opinion evidence that proved Plaintiff's need to elevate her legs. Plaintiff claims that her treating physician's prescribed elevation as a method to reduce swelling.

In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. *Rogers v. Commissioner of Social Security,* 486 F. 3d 234, 242 (6th Cir. 2007). Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. *Id.* (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004)). If the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Id.* (*citing Wilson,* 378 F.3d at 544). When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the

physician; and any other relevant factors. *Id*. (*citing* Wilson, 378 F. 3d at 544). There is a rebuttable presumption that the treating physician's opinion is entitled to great deference, its non-controlling status notwithstanding. *Id.* (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188, at *4).

The ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (*citing* at SOC. SEC. RUL. 96-2p, 1996 WL 374188, at *5). The reason to employ this standard is twofold: the claimant understands the disposition of his or her case and the reviewing court can conduct meaningful review of the ALJ's application of the rule. *Id.* (*citing Wilson,* 378 F. 3d at 544) (*quoting Snell v. Apfel*, 177 F. 3d 128, 135 (2nd Cir. 1999)).

In this case, the ALJ has not minimalized the severity of Plaintiff's swelling. The ALJ acknowledged that Plaintiff's continued to have pain and swelling in her right foot and that she elevated her feet to alleviate the swelling (Tr. 17). Ultimately, the ALJ found that Plaintiff's impairments included chronic right foot pain and swelling (Tr. 19). These conclusions are supported by objective medical evidence. However, there is a lack of medically determinable evidence from which the ALJ could have concluded that the need to elevate her legs was a non-exertional limitation that should be considered in assessing residual functional capacity.

Plaintiff testified that her physician told her to elevate her legs (Tr. 279-280, 285-286). Neither treating physician, Drs. Bigler or Dolce, made this recommendation. Plaintiff told Dr. Bigler that she could not wear shoes because of the swelling in her feet (Tr. 220). Elevating her legs was not mentioned as part of his prescribed treatment (Tr. 220-221). Plaintiff complained to Dr. Dolce that her legs were swollen. Dr. Dolce advised Plaintiff that if she decreased her weight and wore the compression

11

stockings that she would decrease the swelling in her lower extremities.  Elevation of her legs was not recommended as a part of her treatment (Tr. 206).

There are no medical signs or laboratory findings that Plaintiff needs to elevate her legs.  Consequently, the ALJ was not bound by her testimony that the need to elevate her legs was a non-exertional limitation that precluded the performance of a range of sedentary work.

Next Plaintiff contends that the VE's testimony proves that she is disabled.  The VE responded to the hypothetical that the need to elevate Plaintiff's legs more than one hour per day, precluded all work activity.

It is a clearly established rule that a VE's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.  *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987).  A VE's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists.  *Id.*  A hypothetical question need only include those limitations accepted as credible by the ALJ.  *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir.1993).

Here, Plaintiff's counsel characterized Plaintiff's impairment as limiting her to work that permitted her to elevate her feet more than one hour per day.  Plaintiff's counsel then asked the VE whether Plaintiff could perform jobs existing in significant numbers in the national economy despite this impairment.  The VE answered that the need to elevate her feet under these circumstances would preclude all work activity.  This response cannot constitute substantial evidence as the hypothetical question did not accurately set forth Plaintiff's physical impairments.  Counsel's incorporation of the need to elevate Plaintiff's feet was neither deemed credible by the ALJ nor explained and/or supported

by medical or clinical signs. The ALJ did not err in failing to rely on a response to a hypothetical question that did not accurately incorporate Plaintiff's physical limitations.

## CONCLUSION

For these reasons, the Magistrate orders that the Commissioner's decision be affirmed and the case dismissed.

/s/*Vernelis K. Armstrong*
Vernelis K. Armstrong
United States Magistrate Judge

Dated: March 24, 2008